**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Articon Hotel Services LLC, | ) | Case No. 25 B 13601 |
| | ) | |
| Debtor. | ) | Hon. Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION AND ORDER SUSTAINING BALDWIN ENTERPRISES'
OBJECTION TO THE DEBTOR'S SUBCHAPTER V DESIGNATION**

Baldwin Enterprises objects to the Debtor's designation as a "small business debtor" and its effort to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.  (Dkt. No. 71)  Baldwin argues that its judgment claim counts toward, and thus the Debtor exceeds, the Subchapter V debt limit.  Given the plain text of the statute, and following Seventh Circuit precedent interpreting a near-identical provision, I agree with Baldwin and sustain its objection.

I.

Through the Small Business Reorganization Act of 2019 (Pub. L. No. 116-54, 11 U.S.C. §§ 1181–1195 (2019)) Congress enacted "Subchapter V" of Chapter 11 to create a streamlined reorganization process and make it available for certain businesses with modest debts.  Only a "small business debtor" is eligible for, and can elect to participate in, the Subchapter V process. 11 U.S.C. § 103(i) (providing that Subchapter V applies only to cases where the debtor "as defined in section 1182" elects to proceed under that subchapter); *id.* § 1182(1) (providing that the term "debtor" in Subchapter V means "small business debtor"); *see also* Fed. R. Bankr. P. 1020(a) (requiring a debtor to "state in the petition whether [it] is a small business debtor and, if so, whether the debtor elects" to proceed under Subchapter V).

1

A "small business debtor" is a "person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $3,424,000[1] . . . not less than 50 percent of which arose from the commercial or business activities of the debtor."  11 U.S.C. § 101(51D).[2]  Baldwin asserts that the Debtor exceeds the statutory debt limit and, thus, is not a "small business debtor" eligible for Subchapter V.  *See* Fed. R. Bankr. P. 1020(b) ("The United States trustee or a party in interest may object to the debtor's designation [as a small business debtor].").

This bankruptcy arises from "long standing litigation with Baldwin Enterprises."  (Dkt. No. 56, Status Report, ¶ 4, referring to *Baldwin Ent., Inc. v. Articon Hotel Services, LLC*, No. 2017-L-28 (Ill. Cir. Ct.), pending in Jefferson County, Illinois)  Following seven years of contentious proceedings and an 11-day trial, on October 1, 2024, a state court entered judgment against the Debtor for $6,401,042.15.  (Dkt. No. 71, Ex. B, p.86, ¶ I(a)(i))  After still more litigation over Baldwin's request for pre- and post-judgment interest, costs and expenses, and attorneys' fees, on May 8, 2025, the court entered what it called a "Final Judgment" for $10,070,695.10.  (Dkt. No. 71, Ex. D, p. 8)  The Debtor then filed a post-trial motion to vacate judgment and, following a hearing, both parties were directed to submit proposed orders to the

---

[1]  The Judicial Conference of the United States adjusted the threshold amount for cases filed on or after April 1, 2025 from $3,024,725 to $3,424,000 to reflect changes to a consumer price index published by the Department of Labor.  *See* Adjustment of Certain Dollar Amounts Applicable to Bankruptcy Cases, 90 Fed. Reg. 8941 (Feb. 4, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-02-04/pdf/2025-02207.pdf.

[2]  In response to the COVID-19 pandemic, Congress increased the debt limit for Subchapter V cases to $7,500,000 for one year.  *See* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).  But that provision expired.  Many have since lobbied Congress to reinstate the COVID-era inspired Subchapter V expansion or otherwise increase the debt limit in light of the success Subchapter V has achieved in reducing the cost of bankruptcy, reorganizing many challenged companies, and helping many individuals and creditors.  To date, though, Congress has not done so, so parties and courts must apply the statute as currently written.

state court for entry.  (Dkt. No. 71 ¶¶ 10–12)[3]  But instead of filing a proposed order on its

motion to vacate judgment with the state court as it had requested, the Debtor initiated this

bankruptcy (Dkt. No. 71 ¶ 13), which stayed the state court suit while its motion to vacate the

final judgment was pending, *see* 11 U.S.C. § 362(a).

The Debtor's Petition alleged that its "aggregate noncontingent liquidated debts" were

below the $3,424,000 debt limit and it elected to proceed under Subchapter V as a "small

business debtor."  (Dkt. No. 1 § 8)  The Debtor identified assets between $100,001 and $500,000

(*id.* § 15) and liabilities between $1,000,001 and $10 million (*id.* § 16).[4]  And the first claim

listed in the Debtor's Form 204 (the so-called "top 20 list" of unsecured claims) was Baldwin's

$10,070,695.10 judgment, which the Debtor indicated was "Contingent Unliquidated Disputed"

in the appropriate column.  (*Id.* p. 7; *see also* Dkt. No. 46, Schedule E/F, row 3.2 (checking each

of the "Contingent," "Unliquidated," and "Disputed" boxes for Baldwin's scheduled claim))

Since it identified Baldwin's claim this way (given its pending post-trial motion and ability to

appeal), the Debtor took the position that its liabilities did not exceed the relevant debt limit and

it elected to proceed under Subchapter V.

II.

The crux of this dispute is whether Baldwin's claim, given the status of the state court

lawsuit on the petition date, is a "noncontingent liquidated" debt within the meaning of 11 U.S.C.

§ 101(51D).  The Bankruptcy Code does not define either term.  BLACK'S LAW DICTIONARY

(12th ed. 2024) defines "liquidated" as "(Of an amount of debt) settled or determined, esp. by

---

[3]   Baldwin also asserts that the state court had denied the Debtor's request that enforcement of the Final Judgment
be stayed pending the resolution of its post-judgment motion.  (*See* Dkt. No. 71 ¶¶ 8–9, 15; Dkt No. 78 ¶ 2)

[4]   The Debtor's filings also claim for the last full year preceding its bankruptcy filing gross revenue exceeding
$10 million and assets-on-hand worth nearly $4 million.  (*See* Dkt. No. 9, Ex. A; Dkt. No. 47 p. 1)

agreement."  Other dictionaries have similar definitions.  *See* Friedman, DICTIONARY OF BUSINESS AND ECONOMICS TERMS (5th ed. 2012) (defining "liquidated debt" as "debt undisputed as to its existence or amount").  And "noncontingent" is the opposite of "contingent," so it appears to contemplate the opposite of something "uncertain" or "unpredictable" or, said differently, something *not* "[d]ependent on something that might or might not happen in the future; conditional."  *Contingent*, BLACK'S LAW DICTIONARY (12th ed. 2024).

The Bankruptcy Code requires qualifying claims to be both liquidated and noncontingent, but it does *not* require them to also be undisputed—a third concept that the Code and official forms regularly invoke in the same breath when dispute is a distinction that makes a difference.  *See, e.g.*, 11 U.S.C. § 101(5) ("The term 'claim' means—right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed . . ."); *id.* § 1111(a) ("A proof of claim or interest is deemed filed . . . for any claim or interest that appears in the schedules . . . , except a claim or interest that is scheduled as *disputed*, contingent, *or* unliquidated." (emphasis added)); Fed. R. Bankr. P. 3003(b)(1) ("An entry on the schedule of liabilities . . . is prima facie evidence of the validity and the amount of a creditor's claim—except for a claim scheduled as *disputed*, contingent, *or* unliquidated." (emphasis added)); Official Form 204 (requiring debtors to indicate whether a listed claim "is contingent, unliquidated, *or disputed*" (emphasis added)); Official Forms 206D, 206E/F (requiring debtors to identify if a scheduled claim is Contingent, Unliquidated, or Disputed).  The omission of "undisputed" from Section 101(51D) tells us that while a claim must be *ascertainable* with *certainty* (i.e., we know how much it is and that the circumstances that would give rise to the claim have been triggered) to count toward the debt limit, the debtor doesn't need to agree it is obligated to pay the debt.  So while the state court decision in

4

Baldwin's favor wasn't technically "final" even at the trial level, and trial court losers like the

Debtor also have a right to appeal, the limited uncertainty created by the semi-limbo status of

Baldwin's suit goes to the *disputed* nature of the claim and not to whether it is liquidated or

contingent.

The Seventh Circuit's opinion in *Matter of Knight*, 55 F.3d 231 (7th Cir. 1995) confirms

this reading. The court there interpreted 11 U.S.C. § 109(e), which sets the debt limit for Chapter

13 cases. At the time, individuals could seek relief under Chapter 13 only if they had regular

income and, on the petition date, "noncontingent, liquidated, unsecured debts of less than

$100,000 and noncontingent, liquidated, secured debts of less than $350,000." *Id.* at 234.[5] And

the Bankruptcy Code's text describing what debts count toward the Chapter 13 debt limit,

Section 109(e), is the same as that describing which debts count toward the Subchapter V limit,

Section 101(51D). That is why, as the Debtor admits, courts "have considered chapter 13 law in

determining Subchapter V eligibility." (Dkt. No. 74, p. 3 n.1) *Knight* is binding and dispositive

as to how I should interpret "noncontingent" and "liquidated" for purposes of a debt threshold

that determines a debtor's eligibility under a particular chapter of the Bankruptcy Code.

In *Knight*, the State Board of Accounts ("SBA") filed an unsecured claim against the

debtor for $108,949.50, based on an audit it had done. The audit report explained that Knight

had failed to report 915 traffic violations to the Indiana DMV, so he could be charged a state

court fine of $100 per violation, and he had separately misappropriated another $17,449.50.

*Knight*, 55 F.3d at 232–33. All told, the SBA's proof of claim sought $108,949.50—the

$17,449.50 plus a $91,500 "Penalty Debt" for his failure to report the 915 violations. *Id.* at 233.

---

[5]   Since *Knight* was decided 30 years ago, the debt limit for Chapter 13 cases has risen considerably; today the limit for Chapter 13 eligibility is $1,580,125 of secured debt and $526,700 of unsecured debt. But only the numbers of the debt limit have changed—the rest of the statutory language remains the same, and 11 U.S.C. § 109(e) mirrors 11 U.S.C. § 101(51D) in describing the *types* of debts that count against the respective limits.

The question posed to the Indiana bankruptcy court in *Knight* was whether the "Penalty Debt" counted toward the Chapter 13 debt limit—the debtor argued it did not; he claimed it was "contingent and unliquidated because no action was brought against him by the Attorney General to recover the penalty" and he disputed the claim. *Id.* But the bankruptcy court rejected the debtor's argument and dismissed the case, holding that the debtor was over the statutory debt limit: "[a]lthough the [d]ebtor's liability for the Penalty Debt was not determined pre-petition by a civil lawsuit, all of the events needed to establish or give rise to liability did occur pre-petition" and "[i]t is not necessary to use judgment or discretion in arriving at the amount of the Penalty Debt; simple arithmetic, *i.e.*, 915 times $100.00, suffices." *Id.*

The Seventh Circuit affirmed the bankruptcy court's dismissal and defined the terms "liquidated" and "noncontingent" in ways that are on all fours here. First, in holding that the SBA's claim against Knight was "liquidated," the court distinguished the term "liquidated" from a claim that remains "subject to finality in court," reasoning that a non-finalized debt is still "liquidated" for purposes of the debt limit if it is "subject to 'ready determination and precision in computation of the amount due.'" *Id.* at 235 & n.4 ("[T]he cases uniformly provide the method for determining whether a debt is liquidated: 'If the amount of a claim has been ascertained or can readily be calculated, it is liquidated—whether contested or not.'" (quoting 1 William I. Norton, *Bankruptcy Law & Practice* § 18:12 (2d ed. 1994) and citing *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987) and a series of lower court cases for the proposition that "[t]he case law fully supports this method of determining whether a debt is liquidated.")). Because the amount of Knight's liability was "easily ascertainable" from basic math, it "should be included in the § 109(e) debt calculation as a liquidated debt." *Id.* at 235.

Second, in holding that the SBA's claim against Knight was "noncontingent," the Seventh Circuit rejected the argument that "a debt becomes noncontingent only when a triggering event (such as the entry of final judgment) occurs to make the claim immediately due." *Id.* at 236. Instead, the "concept of contingency involves the nature or origin of liability." *Id.* (quoting *In re McGovern*, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989)). In *Knight*, the SBA's claim was noncontingent—even though such a claim had not even been pled in court, let alone adjudicated—because "all of the allegations upon which the fact of liability is based relate to events that have already occurred." *Id.* (quoting *McGovern*, 122 B.R. at 716).[6]

Here, the status of Baldwin's claim is far more advanced than the SBA's claim in *Knight*. The state court already entered a lengthy opinion finding the debtor liable and a second opinion, called a Final Judgment, identifying a specific sum due. According to Baldwin, moreover, prior to the petition date, the state court had also denied the Debtor's request to stay enforcement of the judgment pending resolution of the Debtor's post-judgment motion. Under the definitions of "noncontingent" and "liquidated" provided by the Seventh Circuit in *Knight*, Baldwin's $10,070,695.10 claim is both; it counts against the debt limit in 11 U.S.C. § 101(51D).

The cases relied upon by the Debtor presented scenarios very different than this case. The Ninth Circuit BAP's unpublished decision in *EmCyte Corp. v. Stahl (In re Stahl)*, B.A.P. No. CC-20-1254, No. 20-bk-11739, 2021 WL 1293853, at *6 (B.A.P. 9th Cir. Apr. 7, 2021), addressed whether to count against the Chapter 13 debt limit claims of trademark infringement

---

[6]    *See also In re Pantazelos*, 540 B.R. 347, 351 (Bankr. N.D. Ill. 2015) (debt triggered pre-petition was "noncontingent" even though litigation over it was ongoing as of the petition date) (non-contingent "does not require that a judgment in a civil suit occur prior to the filing of a petition in order for liability to attach to a debtor"). A classic "contingent" claim would be an indemnity claim—a debtor's contractual obligation to indemnify an officer or director is *contingent* if the officer or director had not yet incurred any costs that would be subject to the indemnity as of the petition date, even though it may not be *disputed* where the debtor agrees it would be obligated to indemnify should the officer or director be held liable for an indemnifiable claim or otherwise incur costs or expenses subject to the indemnity.

7

and breach of contract that hadn't been litigated against the debtor at all as of the petition date. While the objecting creditor tried to analogize its claim to successful litigation it had won against other parties, the court found it inappropriate to assume the sums found in other cases would be repeated in different litigation against the debtor, and ruled—consistent with *Knight* and *Pantazelos*—that "if the dispute itself makes the claim difficult to ascertain or prevents the ready determination of the amount due, the debt is unliquidated and excluded from the § 109(e) computation." *Id.* Similarly, *In re Horne*, 277 B.R. 712 (Bankr. E.D. Tex. 2002), found that as of the petition date, the state court had neither found the debtor personally liable for the claim at issue nor done any work on what was a complicated damages calculation under the Texas Consumer Protection and Deceptive Trade Practices Acts; thus the "posture of the litigation in the case at bar on . . . the Petition date, was vastly different from the situation in the *Knight* case." *Id.* at 717. These cases are inapposite here, where the state court has already entered what it deemed a Final Judgment in a specific, concrete sum. None of the Debtors' cited authorities undermines the conclusion, inescapable from *Knight*, that the state court's judgment in favor of Baldwin counts toward, and exceeds, the Subchapter V debt limit.

The Debtor's reliance on its continued challenge to Baldwin's judgment claim does not alter that conclusion. In what it calls a "Supplement to Schedule F of Debtor's Bankruptcy Schedules," the Debtor advises that "for clarification purposes" it "disputes any claim asserted by Baldwin" and takes the position "that no sums are due to the Debtor by Baldwin and that, in fact, the Debtor is a creditor of Baldwin." (Dkt. No. 58) The Debtor further asserts in that "Supplement" that "[t]here has been no final non-appealable order entered by the Circuit Court of Illinois that would render the purported claim of Baldwin as liquidated or that would invoke the application of res judicata or collateral estoppel." (*Id.*)

8

But the Debtor's disagreement with the state court judgment is irrelevant here.  The Bankruptcy Code defines "debt" as "liability on a claim," 11 U.S.C. § 101(12), and "claim" as a "right to payment" whether or not it is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, matured, disputed, undisputed, secured, or unsecured," *see id.* § 101(5)(A). The Seventh Circuit has interpreted "debt" and "claim" as  "coextensive."  *Knight*, 55 F.3d at 234 (citing S. Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809 and H.R. Rep. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6267).  And the court has made clear that "[i]n light of the virtual synonymy of "debt" and "claim" . . . a disputed claim is a debt to be included when calculating the § 109(e) requirements."  *Knight*, 55 F.3d at 234–35 (citing Norton, *Bankruptcy Law & Practice* 18:12 at § 18-43 and *Energy Co-Op, Inc. v SOCAP Int'l, Ltd. (In re Energy Co-Op, Inc.)*, 832 F.2d 997, 1001 (7th Cir. 1987) ("When a creditor has a claim against a debtor—even if the claim is unliquidated, fixed, or contingent— the debtor has incurred a debt to the creditor.")).  So too here when calculating the Debtor's eligibility as a "small business debtor" under 11 U.S.C. § 101(51D).

To conflate the concepts of "contingent" or "unliquidated" with "disputed"—as the Debtor does here—would undermine the many instances where the Code refers to "disputed" claims alongside (and separate from) those that are "contingent" and/or "unliquidated."  As the cases discussed above explain, these are distinct categories that each tell us something different about the nature and status of a claim.  *See also In re Dow Corning Corp.*, 215 B.R. 346, 358 (Bankr. E.D. Mich.), *supplemented*, 215 B.R. 526 (Bankr. E.D. Mich. 1997) ("The terms 'noncontingent,' 'liquidated', 'disputed' and 'undisputed' are all discrete terms with separate and distinct meanings.").  And where Congress wanted bankruptcy courts to ignore claims that are in good faith dispute when assessing bankruptcy eligibility, it said so expressly.  *See, e.g., In re*

9

*Lake Shore Healthcare & Rehab. Ctr. LLC*, -- B.R. --, 2025 WL 3304827, at *3 (Bankr. N.D. Ill. Nov. 25, 2025) (discussing the eligibility criteria for involuntary filings under 11 U.S.C. § 303 requiring three creditors with unsecured claims not in "bona fide dispute").  Congress did not use that language when setting the eligibility requirements for Subchapter V, something I must "presume was intentional." *Id.* at *5 n. 7.

III.

The Debtor also claims that Baldwin is bound to a position it took earlier in this bankruptcy under principles of "judicial estoppel." (Dkt. No. 74 ¶ 13)  In September, Baldwin asked me to lift the stay on the state court case, noting that the state court had entered a "Final Judgment" and the Debtor had filed this bankruptcy when the state court was on the precipice of rejecting the Debtor's post-trial motion. (Dkt. No. 31)  Baldwin there asked me for "authority to proceed with the State Court Action for the purpose of liquidating the amount of its claim" because "due to the lengthy history of the State Court Action and the complex nature of the proceedings and evidence presented, the State Court is the best venue to litigate the Motion to Vacate, concluding any other post-trial litigation including any appellate proceedings." (*Id.* ¶ 13) The Debtor asserts that Baldwin is now, in opposing its election to proceed under Subchapter V, "chang[ing] its position to make the exact opposite argument": "[d]espite Baldwin's impassioned argument that Baldwin should be entitled to an expedited hearing on the Motion to Modify [Stay] so as to liquidate post-petition its purported pre-petition unliquidated claim, Baldwin now argues in the Objection that its purported claim was liquidated pre-petition." (Dkt. No. 74 ¶ 9)[7]

---

[7]   *See also* Dkt. No. 31, PDF p. 6 ("[Baldwin] prays that: a) Pursuant to 11 U.S.C. § 362(d), this Court enter an order modifying the automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code for the limited purpose of concluding post judgment litigation and liquidating its claims against the Debtor.").

But Baldwin is not bound to the phrasing used in its lift stay motion.  The primary reason is the most basic:  Baldwin didn't win its lift stay motion.  Instead I declined to expedite the hearing as Baldwin had requested (*see* Dkt. No. 42) and, following statements in court suggesting that I was not inclined to lift the stay, Baldwin withdrew its motion (*see* Dkt. No. 61). So judicial estoppel does not apply.  *See, e.g.*, *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014) ("The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions."); *In re Knight-Celotex, LLC*, 695 F.3d 714, 723–24 (7th Cir. 2012) (affirming bankruptcy court decision not to judicially estop party where, among other things, "[t]he record does not support the conclusion that the [party] succeeded in 'persuading' the bankruptcy court to accept the conclusion [previously advanced]."); *see generally New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (internal citation omitted) ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.").

More generally, Baldwin's lack of precision in its lift stay motion cannot overcome the legal reality that, applying *Knight*, Baldwin's claim *is liquidated*, even if it may be subject to further proceedings, and the Debtor exceeds the applicable debt limit under the part of the Bankruptcy Code it seeks to invoke.  What Baldwin's lift stay motion really asked me to do was permit it to *complete* state court proceedings against the debtor.  (Dkt. No. 31 ¶ 13 (seeking permission for the state courts to decide the Debtor's post-trial motion and any appeal)) Characterizing that request as "liquidation" of a claim was a colloquial use of the word—one that Baldwin now realizes was incorrect.  (Dkt. No. 71 ¶¶ 21–22)  But the law is the law is the law, and the legal character of Baldwin's claim is clear from the record.  Using imprecise shorthand in

11

a motion does not create, absent my reliance on it to grant substantive relief, the sort of inconsistent position that would have doomed Baldwin's objection here.  *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) ("Ms. Hindman's statement in her state court suit is not even competent evidence in this case because it states a legal conclusion and is not the admission of a fact that could be dispositive.").

IV.

For the reasons stated here, Baldwin's objection to the Debtor's designation as a "small business debtor" to proceed under Subchapter V of Chapter 11 (Dkt. No. 71) is sustained.  As the Debtor's counsel advised me at the hearing on September 29, 2025, and in accordance with Bankruptcy Rule 1020(a), this case will now proceed under the regular provisions of Chapter 11 of the Bankruptcy Code.  The Subchapter V Trustee (Dkt. Nos. 3–4) is discharged with my thanks for his service.

Signed:   December 8, 2025          By:   _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE